WESTERN DIST.
September, 1834.

THEALL *vs.* THEALL ET ALS.

THEALL
*vs.*
THEALL ET ALS.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF ST. MARY.

In the construction and interpretation of wills, the intention of the testator must be sought in the *words he has used* in the will, and not *aliunde.*

Constructions and interpretations of wills, are not to be resorted to for the discovery of the testator's intention, when he has used none but plain unequivocal expressions.

A testator must be presumed to know that his own property alone can be the subject of his disposition.

So where a community of property exists, and the testator in his olographic will declares he wishes " *the rest of his property,* (after making legacies) both real and personal, divided as follows: *One-half to his wife, and the other half to his brother's children,*" &c : *Held,* that the wife first takes half the community, and one-half of the other half, after deducting debts and legacies.

This is an action of partition.  The plaintiff as surviving wife of the late Joseph Theall, instituted her suit in the Probate Court, for the parish of St. Mary, against the dative testamentary executor, and the testamentary heirs and legatees of her deceased husband, for a partition of his succession, according to the provisions of his olographic will, duly admitted to probate.  The will was dated the 9th February, 1832, and the testator died during that year.  After making several specific legacies, on particular titles, to his collateral relations, the testator proceeds with the following bequest.  " I give my wife Nancy Theall, all my household and kitchen furniture, with the cattle and hogs that are remaining.  The rest of my property both real and personal, I wish divided in the following manner, that is to say : *One-half of all to my wife* Nancy Theall.  The other half to my brother's children," &c.

In pursuance of the above clause in the will, the plaintiff prays to have decreed to her one-half of the estate of her late husband, comprising the community of acquests and gains ; the specific legacies, on particular title, bequeathed to her, and one-half of all the residue of the said succession,

after paying the specific legacies, on particular titles, contained in the will.

The defendants alleged that it was the intention of the testator to dispose of the whole of the property which he possessed, as well his hereditary property, as that held in community with the plaintiff at the time of his death, and that the plaintiff was only entitled to a moiety of the whole estate, after paying the legacies, &c. The evidence consisted of the will and the inventory of the succession. It also appeared that a community of property existed between the spouses at the time of making the will, and at the death of the husband. The wife (now plaintiff) claims one-half of the succession by the operation of law; and one moiety of the other half (after paying the legacies) under the will.

The probate judge decided that it was the intention of the testator, to dispose of all the property (both community and hereditary) of which he should die possessed; and that the dispositions contained in the will in favor of the wife, were intended to be in lieu of all her claims against her husband's succession, and on accepting the advantages conferred by the will, she is bound to receive them in full satisfaction, and discharge of all her legal claims. The plaintiff appealed from this decree.

*Lewis and Bowen* for the plaintiff.

1. The will must be construed so as to give it effect if possible. *La. Code, art.* 1706. 6 *Toullier, p.* 355 n. 321.

2. The words of the will must be understood in their usual sense, or common acceptation. *La. Code, art.* 1705.

3 Meaning and effect are to be given to *all* the words of a will *according to their legal acceptation.* 1 *La. Reports,* 161–2, *and* 2 *La. Reports,* 509.

4. The words of the will must have their full effect, when there is no ambiguity in their meaning, and even where the testator is known to have habitually used a word in an improper sense, still the usual sense of the word will have its effect. 6 *Toullier,* 342, *n.* 308, *p.* 343, *n.* 309, *p.* 345, *n.* 311 *and n.* 312, *and* 313, *and p.* 350.

5. The words " *my property*," in the will cannot apply to the wife's half of the community, because,

1. One half of the community property, was *hers, independent of the testator's will,* and in it she had a *vested right* at the time the will is dated, as well as at his death. 4 *La. Reports,* 188 *and seq. Nov. Recop. lib.* 10 *tit.* 4, *l.* 1.

2. If a husband bequeath *any thing* to his wife, it shall not be taken out of her *gananciales,* but she shall have *it besides them. Nov. Recop. lib.* 10, *tit.* 4, *l.* 8.

3. To apply them in any other way, would be to make the testator show an intention to defraud his wife, under the specious pretence of giving her a legacy ; and this would be contrary to every presumption of law which ever infers an honest rather than a dishonest intent, unless the latter be palpable.

*Brownson* for defendants.

1. Contended that it was the intention of the testator to dipose by *will,* of the *whole* of the property of which he should die possessed. According to this construction, the widow would be entitled only to *one-half* of the whole estate, after paying the legacies, debts, &c.

2. The testator being at the head of the community, evidently *intended* by the expression, " *the rest of my property,*" to include all the estate which existed between him and his wife, at his death, and which he intended should be so divided as to give one-half of the net amount, after the debts and specific legacies were paid, to his wife, and the other half to be divided among his collateral relations. Any other construction would be in violation of the intentions of the testator.

*Garland* on the same side, argued to show that the construction of the will, contended for by the plaintiff, was contrary to the evident intentions of the testator. In construing wills, the universal rule is, that the *intentions* of the testator must govern.

2. This was an olographic will, written by the testator himself a plain unlettered man, whose expressions taken in connexion with the circumstances around him, ought to be

construed with reference to what he intended and did in effect
say, than to strict grammatical arrangement.

*Martin, J.*, delivered the opinion of the court.

The only question which this case presents, depends on the meaning of the last clause of the will of Joseph Theall, the plaintiff's late husband. After making several specific legacies, one of which is in favor of the plaintiff, of the household and kitchen furniture of the testator, and some cattle and hogs, the will concludes by the following clause : " The rest of my property, both real and personal, I wish to be divided in the following manner : that is to say, one-half of all to my wife ; the other half to my brother's children : that is to say, one-half to James Theall's daughter Nancy, the other half to John Theall's children."

On the application of the wife for a partition, the Court of Probates expressed its opinion, that it was the intention of the testator, in this clause, to make a disposition of all the property, of which he should die possessed, as well that which he held in community with his wife, as that which composed his hereditary and proper effects ; and that the disposition in the will in favor of the wife, was intended to be in lieu of her claim on, or against his succession ; and that in accepting the advantages conferred on her by the will, she was bound to receive them in full payment, satisfaction and discharge of all her legal claims. The partition was directed to take place according to the opinion thus expressed ; and the plaintiff appealed.

The counsel for the appellee has contended that the will must be construed according to the evident intention of the testator, who must be believed by the expression " *all my property, real and personal,*" to have included the property which he had acquired by his industry and economy, although the laws of the country gave to his wife one-half of the acquests and gains made during marriage. That he does not use the words " *I give and bequeath,*" in the clause under consideration, but merely expresses the manner in which it is his intention a division should be made. And it is not to be believed, that while the law gave to his wife, one-half of the profits of his industry during the marriage, he could be tempt-

THEALL
vs.
THEALL ET ALS.

In the construction and interpretation of wills, the intention of the testator must be sought in the words he has used in the will, and not aliunde.

Constructions and interpretations of wills are not to be resorted to, for the discovery of the testator's intention, when he has used none but plain unequivocal expressions.

A testator must be presumed to know that his own property alone can be the subject of his disposition.

So where a community of property exists, and the testator in his olographic will declares, he wishes " the rest of his property (after making legacies,) both real and personal, divided as follows: One half to his wife, and the other half to his brother's children"&c. Held, that the wife first takes half the community, and one half of the other half, after deducting debts and legacies.

ed to rob his own relations, by willing away from them one-half of the other half.

There cannot be a truer position, than that under which courts are directed in the construction or interpretation of wills, to be guided by the intention of the testator. This intention must be sought in the words, which he has used in his will. It is not to be sought *aliunde.*

But constructions and interpretations, are not to be resorted to for the discovery of the testator's intention, when he has used none but plain unequivocal expressions. Candles are not to be lighted, when the sun shines brightly.

A testator must be presumed to know, tha this own property only, can be the subject of his disposition, and that he cannot dispose of the property of others.

It is neither extraordinary, uncommon or surprising, that a man should give one-half of his property to his wife, when he bestows the other half on his nephews and nieces.

If a declaration of a testator, that he wishes his estate to be divided between his wife and his collateral relations, is evidence of his intention, that the latter should enjoy the portion coming to them; it is difficult to comprehend, why the declaration should be rejected, when presented as evidence of the liberality of the testator towards his wife.

The bequests appear to us, absolute and unconditional, and we are unable to concur in the opinion, expressed by the Court of Probates, that it is clogged with the condition, that the wife should renounce her legal rights, not resulting from the will.

The wife is, in our opinion, entitled to one-half of the amount of the property of the community, after its debts are deducted. The other half, added to the husbands' private property constitutes his estate. The entire amount of this estate, after his private debts are paid, is subject to the disposition he has made of it, in his will. One-half of the specific legacy, in favor of the plaintiff, and the whole of the other specific legacies are to be deducted, the balance forms the residue, which is to be divided in two equal parts, one of which belongs to the wife, and the other to be divided,

one-half to Nancy, the daughter of James Theall, and the remaining half to be divided among the children of John Theall.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled and reversed; and proceeding to give such judgment, as in our opinion, ought to have been rendered below, it is ordered, adjudged and decreed, that the partition of the estate of Joseph Theall deceased, be made according to the opinion we have expressed; and that the case, for that purpose, be remanded to the Court of Probates; the appellees paying costs in this court.