SCHOTT, Judge.
The principal issue in this case is the trial court’s interpretation of the following clause in decedent’s will:
“Item II. I wish a trust fund to be formed of all my holdings (not mentioned in this) for Caroline who is to receive interest annually, the Whitney Bank and a lawyer she appoints to service.”
Plaintiffs, who are the nephews and nieces of decedent who died in 1969, contend that “Caroline,” who died in 1977, was to be the income beneficiary of the trust with the corpus of the trust passing to decedent’s heirs upon Caroline’s death. Defendants, who are the trustees of the trust and Daughters of Charity of St. Vincent de Paul of Indiana, Inc., which is Caroline’s residuary legatee, contend that the disposition was of the entire residue of decedent’s estate for Caroline in trust, with the result that the remainder of the corpus would fall into Caroline’s estate upon her death.
A secondary issue litigated in the trial court was whether Caroline was the adopted child of decedent and her first husband. If Caroline had been the adopted child of decedent as contended by defendants the *832 issue over the interpretation of the will clause would be moot, since Caroline would have been the sole legal heir of decedent.
Decedent was married to George W. Logan on September 10, 1900, and the Lo-gans had one or two children who died in infancy. Hildagard Berrín was born in a foundling home in New York City on August 4, 1906, and she was placed with Mr. and Mrs. Logan on November 14,1908. She was not the daughter of Mr. or Mrs. Logan but was reared by them under the name of Caroline Logan. She eventually joined the Sisters of Charity and became known as Sister Caroline. The only evidence of an adoption was from the records in the New York Foundling Home which contained the following entry: “Date of written agreement, January 27/11. Legally adopted. (See card files)” Below this is written, “3-2-1911.” This date is written alongside the inscription “date of visitations.” We have concluded that the evidence is insufficient to establish that Caroline was the legally adopted child of decedent, so that the outcome of the case depends solely upon the interpretation of the will clause in question.
Carter v. Succession of Carter, 332 So.2d 439 (La. 1976) contains a summary of the principles which govern the decision in this case. Under LSA C.C. Arts. 1712 and 1713, the courts must endeavor to ascertain the testator’s intention and the function of the court is to determine and carry out that intention if it can be ascertained from the language of the will. Intention must be ascertained from the whole will with effect given to every part of the will as the law will permit. If possible, a will should be read so as to lead to testacy and not to intestacy. Unless the will appears otherwise the law presumes that when a will is executed the testator intends to dispose of his entire estate.
The entire will in the instant case is as follows:
“I, Ora Nelms Logan Shaffer, do hereby make this my last will and testament.
Item 1. I leave to Olyn Soniat the use during her lifetime of the property 1719 Bordeaux Street. After her death it is to go to her son. To her also I leave the painting of my mother and father. Also the farm in Lafourche Parish for (her to) have income from during her lifetime. After her death this farm to go to her son.
Item 2. To William Saufley, Sr. I leave the interest from my stock in the Parish Land and Warf Company. After his death, this stock is to go his son.
Item 3. To William Saufley, Jr., I leave the $3,000.00 owed to me by Presley Soniat.
Item 4. To Nettie Agnes Soniat I leave anything she may want from 1719 Bordeaux.
Item 5. To Nettie Soniat Wright I leave my flat silver.
Item 6. The Shaffer silver to go to Nancy Shaffer Van Neys for her granddaughter.
Item 7. I leave my clothes to Little Sisters of the Poor.
Item 10. I leave the place in Wave-land, Mississippi, to Caroline, she to give it to the teaching sisters of her order. This place not to be sold for ten years.
Item 11. I wish a trust fund to be formed of all my holdings (not mentioned in this) for Caroline who is to receive interest annually, the Whitney Bank and a lawyer she appoints to service.
Item 12. All my personal belongings to go to Caroline.
Item 13. The lot in Clearmont Harbor to Bliney.
Item 14. My handkerchief collection to be given to the guests of the Little Sisters of the Poor, one to each old lady.
Signed by me May 1, 1969
Ora Nelmes Logan Shaffer
Codicil to my will.
I leave the furniture in 1719 Bordeaux Street to Olyn Saufley. Changing donation of my handkerchief collection, I wish it to go to Nell Nelson.
*833 Glass, silver, and china, to be sold (not here) and money given to The Prevention of Cruelty to Animals.
Written by me August 8, 1969.
Ora Nelms Logan Shaffer
Silver is in basket under bed.”
When the disputed clause is compared to the other provisions of the will no support is found for plaintiff’s position. For instance, under Item 1 the use of the Bordeaux Street property is left to Olyn Soniat with the added bequest of the property to her son upon Olyn’s death. A similar disposition is made of the farm in Lafourche Parish with the income going to Olyn Soniat but with the farm passing to Olyn’s son upon her death. Similar dispositions are made in Item 2 and Item 6. By making these bequests in this manner decedent indicated that she was aware of her right and ability to leave the use or usufruct to one person for his lifetime and the naked ownership to another but she did not choose to designate any legatee other than Caroline to be the recipient of the residue of her will in trust.
When the will is read as a whole it demonstrates an intention on decedent’s part to dispose of her entire estate. To construe Item 11 as leaving only an income interest to Caroline with the residue upon Caroline’s death to be divided according to the laws of intestacy would be inconsistent with the rest of the will as well as the jurisprudence cited and repeated in the Carter case.
Much of plaintiff’s argument centers around the use by the testatrix of the word “interest” in the bequest. They contend that this word connotes that Caroline was to receive only income as opposed to the interest in the residue in trust. This contention is not supported by the testatrix’s use of the word “income” in the first item of the will, which demonstrates that she was making a distinction between income and interest in the broader sense. Furthermore, the use of the word “interest” in Item 2 is specifically modified by the words “from my stock” whereas the use of the word “interest” in Item 11 is not modified but seems to be used in a broader sense than the use of the word in Item 2. Finally, the word interest in the Louisiana Trust Code has a broader meaning than the one plaintiff would supply. For instance, R.S. 9:1771 states that “any interest in such property may be transferred in trust.” The Code speaks of income interest in trust, R.S. 9:1961, et seq., as well as interest in the principal of the trust without an interest in income, R.S. 9:1971 et seq. From these and other parts of the Code it is clear that income and interest are not synonymous but rather the term interest is a broader term to be modified by such terms as income or principal, depending upon the intention of the settlor. The testatrix’s failure to modify the word interest in the bequest to Caroline by a term, such as income, tends to defeat plaintiff’s argument that decedent used the word interest to denote only income.
Plaintiffs sought to prove at the trial that decedent’s intention not to leave the residue of her estate to Caroline was demonstrated by a lack of closeness and affection between decedent and Caroline while they were both alive, by a dislike on decedent’s part for the Daughters of Charity of which Caroline was a member and which would ultimately become the owner of the residue if left to Caroline by decedent, and some rather vague testimony by one witness that decedent had expressed an intention simply to care for Caroline during her lifetime implying that the residue was not to fall into Caroline’s estate upon her death. In Succession of Rusha, 158 La. 74, 103 So. 515 (1925) the court indicated that parol evidence to establish the intention of a testator was to be treated with great caution and given little weight if admitted at all. In any event, the testimony that decedent had such great dislike for the Daughters of Charity is contradicted by Item 10 of decedent’s will, in which she made a bequest of her real estate in Mississippi to Caroline “to give it to the teaching sisters of her order,” and the contention by appellants that decedent wanted the residue of her estate to be divided among her heirs according to the laws of intestacy is contradicted by Item 3 *834 in which she specifically declined to forgive a $3,000 debt owed to her by one of these presumptive legal heirs.
The trial judge had the benefit of observing and hearing appellants’ testimony and was apparently unimpressed. We find no basis for disturbing his conclusion “that the trust fund — lock, stock and barrel — was for Caroline.” The judgment appealed from is affirmed.
AFFIRMED.
CHEHARDY, J., concurs and assigns reasons.